UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAMBON & ASSOCIATES, L.L.C.                CIVIL ACTION

VERSUS                                     NO: 09-2670

SEAMAR DIVERS, INC.                        SECTION: J(1)


## ORDER AND REASONS

Before the Court is Plaintiff Jambon & Associates, L.L.C.'s ("Jambon") **Motion for Summary Judgment (Rec. Doc. 22)**, seeking a judgment in its favor against Seamar Divers, Inc. ("Seamar") on its claims for payment of amounts due under an open account, as well as for attorney's fees and costs, pursuant to Louisiana's Open Account Statute, Louisiana Revised Statutes § 9:2781. The Court has reviewed the motion, the record, the memoranda of counsel, and the applicable law, and now finds as follows.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

Jambon and Seamar entered an agreement in September of 2008 whereby Jambon would provide various marine vessels for use by Seamar, along with support services for those vessels, at agreed upon rates and costs. In connection with this agreement, Jambon maintained an open account related to the use and servicing of the various vessels. Specifically, the agreement included (1) the use of the vessel M/V SYDNEY from September 6 through September 11, with a total amount of $31,687.20 invoiced on

September 30 under net 30 terms; (2) the use of the vessel M/V SILENT LADY - along with its cook and provision of meals and bunks - from September 25, 2008 through October 2, 2008, with a total amount of $59,200 billed on October 7 under net 30 terms, as well as $21,200 for fuel (later credited $10,176 for unused fuel) and $4,128 for miscellaneous charges invoiced on October 3 under net 30 terms; (3) the use of the vessel M/V JAMBON SUPPLIER from September 28 through October 6, with a total amount of $93,691.50 invoiced on October 14 under net 30 terms, and an additional $954 of fuel costs invoiced on October 15 under net 30 terms.

Jambon's complaint alleges that these various amounts remained unpaid beyond the net 30 terms, prompting a request for payment on January 7, 2009 with attached invoices and supporting documentation. Jambon's complaint and motion indicate that $143,997.50 remained unpaid beyond the net 30 terms. In any event, Seamar made several partial payments towards the outstanding amount between January and May of 2009, leaving a remaining balance as calculated by Jambon of $36,350.94. In addition, Jambon contends that Seamar owes a total of $1232.06 in legal interest as calculated on the shifting principal amounts due over the January-May period of partial payments. Additionally, Jambon contends that Seamar is responsible for attorney's fees and costs in the amount of $5,441.07 and 510.66,

respectively, under § 9:2781, as Seamar did not pay the outstanding balance in full within fifteen days of service of the complaint in this matter.

Jambon filed suit in this Court on February 10, 2009, asserting diversity jurisdiction under 28 U.S.C. § 1332 with respect to its Louisiana law open account claims in excess of $75,000. Subsequently, Jambon filed an amended complaint to assert an alternative breach of contract claim in addition to its claim under the Louisiana Open Account Statute. Rec. Doc. 15.

## THE PARTIES' ARGUMENTS

Jambon essentially reiterates the allegations of its complaint in support of its motion for summary judgment. Basically, Jambon argues that Seamar's various partial payments constitute an admission that the outstanding amount is actually owed. As such, Jambon argues that there is no material issue of fact and that the full amount of $43,534.73 – constituting the remaining principal amount, plus interest, attorney's fees, and costs – is due immediately under the Louisiana Open Account Statute.

In opposition, Seamar points out four issues that allegedly preclude summary judgment. First and foremost, Seamar notes that Jambon's claims arise out of the alleged breach of various charter party and/or other maritime contractual agreements involving three vessels. As such, Seamar contends that these

claims are governed by the general maritime law of contracts, not by the Louisiana Open Account Statute.

Second, and contrary to Jambon's assertions that the amounts at issue are undisputed, Seamar argues that it has always contested various amounts due under three of the invoices at issue. Specifically, Seamar contests the inclusion of $1,880, which it claims was deducted with the knowledge and acquiescence of Jambon's authorized representative, for Seamar equipment that was retained on the M/V JAMBON SUPPLIER. Additionally, Seamar contests the inclusion of $5,082 for fuel and rope charges that were neither requested nor used by Seamar. Seamar argues that these disputed items and amounts constitute issues of material fact precluding summary judgment.

Third, Seamar argues that Jambon's calculations of the original total amount due under the invoices – $143,997.50 – is incorrect. Specifically, Seamar notes that, using Jambon's own figures for the amounts due on the individual unpaid invoices – $200,684.70, which includes the disputed amounts – and subtracting payments of $73,437.20 made prior to the filing of the instant suit,[1] only $127,247.50 was due under the charter parties at the time suit was filed. Seamar argues that this

_____

[1] Specifically, as noted in Jambon's briefing, Seamar made payments of $16,750, $25,000, and $31,687.20 on January 7, 20, and 28, respectively.

4

material issue of fact precludes summary judgment.

Finally, Seamar argues that Jambon is not entitled to
recover its attorney's fees under the general maritime law, even
if it is successful to some extent in the instant litigation.
Specifically, Seamar argues that the attorney's fee provisions of
§ 9:2781 conflict with the general maritime law rule that parties
bear their own costs and attorney's fees in maritime contract
disputes.  Texas A&M Research Found. V. Magna Transp., Inc., 338
F.3d 394, 406 (5th Cir. 2003); Nexen Petroleum U.S.A. v. Sea Mar
Div. Of Pool Well Servs. Co., 2007 WL 2811001, *4 (E.D. La. Sept.
25, 2007).  Thus, because Jambon's claims arise out of the
alleged breach of purely maritime charter party contracts, Seamar
argues that § 9:2781 is inapplicable.

In addition, Seamar contends, with the support of an
affidavit, that it has paid $193,802.70 against the original
outstanding balance of $200,684.70, leaving an unpaid amount of
only $6,882.  However, Seamar additionally argues that of this
amount, $1,800 should be deducted for Jambon's retention of
Seamar's equipment aboard the M/V JAMBON SUPPLIER, as authorized
by Jambon's representative.  As such, Seamar contends that only
$5,082 remains in dispute, including amounts which Seamar
contests as allegedly unordered and unused items.

In reply, Jambon argues that, as master of its own
complaint, it has specifically invoked solely the diversity

jurisdiction of this Court, insofar as it has asserted claims under the Louisiana Open Account Statute.  Additionally, while Jambon concedes that it has asserted *alternative* breach of contract claims, it argues that the present motion seeks summary judgment only on its primary open account claims.  Jambon further notes that the cases relied on by Seamar for its argument that the general maritime law applies to preclude recovery of attorney's fees are all factually distinguishable, and do not involve open account scenarios.  As such, Jambon argues that Seamar cannot recast its complaint as a "maritime contract" claim to exploit an advantageous aspect of maritime law.  Additionally, Jambon notes that the plaintiffs in the cases cited by Seamar *specifically invoked admiralty jurisdiction*, and thus were properly relegated to accepting the substantive provisions of that law, for better or for worse.  See <u>McGinnis, Inc. v. Mariner Transp., Inc.</u>, 1992 WL 124798, *1 (E.D. La. May 28, 1992).  Jambon reiterates that it *has not invoked admiralty jurisdiction* in the instant case, and has instead relied *solely* on the diversity jurisdiction of this Court.  Regardless, even if the general maritime law is found to apply to the instant case, Jambon notes that several decisions of other sections of this Court have granted attorney's fees *in admiralty case* under § 9:2781.  See, e.g., <u>Elmwood Marine Servs. v. Int'l Towing & Transp. Co.</u>, 2002 WL 100622, *2 (E.D. La. Jan. 23, 2002);

<u>Lachmann Agencias Maritimas, S.A. v. Am. Gulf Lines</u>, 1996 WL
50798,*2 (E.D. La. Feb. 7, 1996). Jambon also notes that other
sections of this Court, while ultimately denying claims for
attorney's fees under § 9:2781 in the context of underlying
maritime law causes of action, have actually decided the
attorney's fee issue *on state law grounds* under § 9:2781, and not
as a matter of maritime law. See <u>Mon River Towing, Inc. v. Alan
D. Alario & Associates, L.L.C.</u>, 2007 WL 2071661, *3 (E.D. La.
July 12, 2007); <u>M/G Transport Services, Inc. v. Dearing</u>, 1997 WL
539884, *1 (E.D. La. Aug. 29, 1997); <u>St. James Stevedoring, Inc.
v. Ulltang</u>, 1997 WL 52444, *3 (E.D. La. Feb. 6, 1997).

In addition, Jambon recognizes in accordance with Seamar's
arguments, that the general "American Rule" precluding recovery
of attorney's fees applies as a matter of general maritime law.
However, Jambon notes that this general rule can be overcome if
(1) the parties include a contractual provision allowing for
recovery of fees upon successful litigation of a claim; or (2) a
statute specifically allows for recovery of attorney's fees. See
<u>Travelers Cas. & Sur. Co. Of Am. v. PG&E</u>, 549 U.S. 443, 448
(2007). In this case, Jambon argues that § 9:2781 is a statute
providing for attorney's fees in the instant case, and further
contends that the requirements of the statute have been met. As
such, Jambon argues that its claim for attorney's fees in this
open account suit is appropriate.

7

As for Seamar's arguments regarding the correct amount of the outstanding invoices, Jambon very simply contends that its math has been and remains correct. The conglomerate amount due under the invoices in dispute is $217,434.70. Despite Seamar's unsupported contention that it has paid a total of $193,802.70 against this original outstanding amount, Jambon points to its accounts receivable reports and checks received from Seamar, which reveal that only $181,083.76 was paid, leaving an outstanding balance of $36,350.94. Jambon asserts that the $193,802.70 number put forward by Seamar is simply the total amount due minus the two disputed invoices and the allegedly authorized $1,800 credit. However, Jambon "emphatically denies" that any payments other than those reflected in their evidence have been made by Seamar.

In any event, Jambon argues that the $6,882 which Seamar alleges is the only amount remaining in dispute is simply incorrect. Further, although Seamar argues that it has consistently contested certain rope and fuel charges, Jambon contends that it has offered *no evidence* to support its argument. Additionally, Jambon notes that it has *already credited charges* for unused fuel. Jambon notes in particular that, while Seamar purports to dispute the $954 fuel charge in invoice No. 2670 related to the M/V JAMBON SUPPLIER, it has not disputed the much larger fuel charge of $11,024 related to the M/V SILENT

8

LADY. Furthermore, Jambon notes that Seamar's dispute as to the $954 fuel charge in Invoice No. 2670 is disingenuous, given that *it has already paid $911* of the $954 amount by check dated March 9, 2009, which specifically references payment for that specific invoice. In addition, Jambon notes that Seamar has presented no evidence, other than a self-serving affidavit, indicating its dispute of Invoice No. 2546 for purchase of rope and its dispute related to the alleged $1,800 credit on Invoice No. 2630. Regardless, Jambon notes that even if these amounts are disputed, that still leaves an unpaid amount of $21,155.94 on Invoice No. 2630.

As such, Jambon reiterates that it is entitled to summary judgment on its open account claims for the outstanding principal amount of $36,350.94, plus interest in the amount of $1,383.69, costs in the amount of $510.66, and attorney's fees under § 9:2781 in the amount of $5,441.07. In sum, Jambon requests entry of summary judgment for a total of $43,534.73.

Seamar has filed a sur-reply, reiterating its arguments that the general maritime law should apply to this case, thus precluding application of Louisiana's Open Account Statute, notwithstanding Jambon's invocation of diversity as opposed to admiralty jurisdiction.

## DISCUSSION

Summary judgment is appropriate if "there is no genuine

issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).

As a threshold matter, the Court must address whether Jambon's claims are properly asserted under Louisiana Revised Statutes §9:2781, or whether its claims arise as a matter of the general maritime law of contracts. Contrary to Jambon's contention that the legal issues raised by Seamar's opposition are merely "an attempt to cajole this Court into denying" summary judgment, the Court finds that the issues of law involved in the present motion are complex and deserving of a considered inquiry.

It is true that, in terms of the instant motion, Jambon has asserted its claims for nonpayment of invoices by Seamar *solely* under an open account theory pursuant to § 9:2781, and *solely* under this Court's diversity jurisdiction.[2] However, Jambon's own description of the agreements that gave rise to the invoice charges reveals that "the situation presented here has a

_____

[2] The Court recognizes that Jambon's amended complaint also generally asserts an alternative claim for breach of contract, which is not before the Court on the present motion.

more genuinely salty flavor" than Jambon's complaint lets on.
Kossick v. United Fruit Co., 365 U.S. 731, 742 (1961).
Specifically, Jambon alleges that it agreed with Seamar "to make
available marine vessels and services connected to the use
thereof," including such services as provision of fuel, housing
and feeding crew members, and providing other necessaries.  See
Rec. Doc. 1, ¶VI.  This description of the agreements reveals
that Jambon and Seamar entered into a charter party agreement
with respect to the three vessels at issue, as well as some form
of maritime contract with respect to the provision of services
for those vessels.  See, e.g., CGL Underwriters v. Edison Chouest
Offshore, Inc., 1993 WL 455600, *3 (5th Cir. Oct. 22, 1993)
("Charter parties and other arrangements for the hire of a vessel
clearly come within admiralty jurisdiction . . . ."); Lee v. M/V
Gem of Madras,  2006 WL 568545, *2 (S.D. Tex Mar. 6, 2006) ("A
contract to provide fuel is a maritime contract because, [a]
maritime contract is [a] contract relating to a ship in its use
as such[.]") (citation omitted).  Thus, despite Jambon's attempt
to avoid the law of the sea by portaging its claims under
Louisiana law, the invoices at issue in this case and the
agreements from which they arose are unmistakably maritime
contracts that are governed by the general maritime law.

     Nonetheless, Jambon argues that, because it only seeks
summary judgment on its Louisiana open account claims that are

presently before this Court as a matter of diversity jurisdiction, the substantive law of admiralty is inapplicable. In other words, Jambon argues that, as master of its complaint, it has *solely alleged* claims under § 9:2781 for purposes of the present motion.  Thus, Jambon asserts that Seamar should not be able to "force this Court to decide the matter under a standard more favorable to it when Jambon has the right to enforce the debt owed to it under either [Louisiana or maritime] law," and when it has chosen to proceed under the state law cause of action.  Rec. Doc. 22, p. 3.  As such, Jambon contends that it is entitled to collect the unpaid amounts under the Open Account Statute, as well as interest and its costs and attorney's fees, notwithstanding the general rule of maritime law precluding recovery of fees and costs absent a contractual or statutory provision providing for recovery of fees and costs.

Jambon's novel argument does not withstand scrutiny, and evidences a fundamental misunderstanding of the interplay between jurisdiction and choice of law.  A leading treatise on admiralty and maritime law lays out this dynamic succinctly:

> A claim grounded on the general maritime law may be asserted in a federal district court even in the absence of diversity or other grounds of federal jurisdiction. Such a claim may also be asserted in the diversity forum or in a state court under the saving to suitors clause. **In all cases, regardless of the forum, the applicable substantive law is the general maritime law.**

T. Schoenbaum, Admiralty and Maritime Law § 4-1, p. 159 (4th

ed.2004) (emphasis added). The requirement that substantive

maritime law govern maritime claims - tort or contract -

regardless of the forum in which they are brought, is central to

the overarching goal of uniformity that undergirds the entire

system of maritime law. See, e.g., Romero v. International

Terminal Operating Co., 358 U.S. 354, 373 (1959) ("It is true

that state law must yield to the needs of a uniform federal

maritime law when this Court finds inroads on a harmonious

system."); Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14, 28

(2004). The Supreme Court has affirmed the constitutional and

historic basis for this principle of uniformity:

> [T]he Constitution must have referred to a system of law
> coextensive with, and operating uniformly in, the whole
> country. It certainly could not have been the intention
> to place the rules and limits of maritime law under the
> disposal and regulation of the several states, as that
> would have defeated the uniformity and consistency at
> which the Constitution aimed on all subjects of a
> commercial character affecting the intercourse of the
> states with each other or with foreign states.

The Lotowanna, 88 U.S. 558 (21 Wall.), 575 (1874); see also

Chelentis v. Luckenbach S.S. Co. Inc., 247 U.S. 372, 382 (1918)

(quoting The Lotowanna); Kirby, 543 U.S. at 395.

Accordingly, the undercurrent of uniformity in the maritime

law prohibits a state law rule of recovery from overriding the

parallel rule of recovery under maritime law, because "a

substitution [of state law for maritime law] would distinctly and

definitely change or add to the settled maritime law; and it

would be destructive of the uniformity and consistency at which
the Constitution aimed on all subjects of a commercial character
affecting the intercourse of the states with each other or with
foreign states." <u>Chelentis</u>, 247 U.S. at 383 (internal quotations
omitted).

In fact, the Supreme Court has specifically held – albeit in
a *tort* context – that a party cannot elect for application of
state law, even when the claims are asserted solely under a
federal court's diversity jurisdiction, when the underlying
rights at issue arise under the general maritime law.  <u>Pope &
Talbot, Inc. v. Hawn</u>, 346 U.S. 406, 410 (1953).  In <u>Hawn</u>,
plaintiff sustained injuries when he slipped and fell through an
uncovered hatch hole on defendant's vessel while it was berthed
for repairs.  <u>Id</u>. at 407.  Plaintiff brought a suit in diversity
alleging unseaworthiness of the vessel and negligence by
defendant.  <u>Id</u>.  The jury granted plaintiff an award, reduced by
his 17.5% contributory negligence, and the appellate court
affirmed the award to plaintiff.  <u>Id</u>.  On certiorari, the
defendant argued, in part, that because the case was before the
federal court sitting in diversity, Pennsylvania law – under
which *any* contributory negligence would have been a complete bar
to the plaintiff's recovery – should apply under the
<u>Erie</u> doctrine.  <u>Id</u>. at 205.  The Supreme Court rejected
application of the <u>Erie</u> doctrine, finding that the basis for

jurisdiction could not affect the fundamental nature of the

rights at issue:

> It appears to be contended here, however, that one
> injured on navigable waters who sues in federal court
> under diversity jurisdiction somehow jeopardizes his
> right to have as full a recovery as he otherwise would.
> It is certainly contended that one who sues on the 'law
> side' of the docket has much less chance to recover than
> one who sues on the 'admiralty side.' Thus we are asked
> to use the <u>Erie-Tompkins</u> case to bring about the same
> kind of unfairness it was designed to end. Once again,
> the substantial rights of parties would depend on which
> courthouse, or even on which 'side' of the same
> courthouse, a lawyer might guess to be in the best
> interests of his client. We decline to depart from the
> principle of equal justice embodied in the <u>Erie-Tompkins</u>
> doctrine. Of course the substantial rights of an injured
> person are not to be determined differently whether his
> case is labeled 'law side' or 'admiralty side' on a
> district court's docket.

<u>Id</u>. at 206.  Thus, as recognized in <u>Hawn</u>, the underlying rights

of the parties should not be materially affected merely by one

party's choice of forum.

Similarly, in the context of maritime *contract* claims, the

Supreme Court has held that attempts to color a claim as a state-

law cause of action under diversity jurisdiction, when the claim

is clearly based on a maritime contract, cannot defeat the

applicability of the substantive maritime law.  <u>Kirby</u>, 543 U.S.

at 28-29.  In what the Court described somewhat humorously as "a

maritime case about a train wreck," the main issue was whether a

railroad defendant could invoke maritime law limitation of

liability pursuant to a so-called "Himalaya Clause" provision in

various through-bills of lading for a shipment from Australia to

15

Alabama. Id. at 21-22. Before addressing the applicability vel

non of the limitation provisions, the Supreme Court considered

the argument that "at bottom, [the case was simply] a [state law]

diversity case involving tort and contract claims arising out of

a rail accident somewhere between Savannah and Huntsville," to

which maritime law should not apply. Id. at 22. The Court

rejected this argument, finding that the contracts at issue were

in fact maritime in nature, and further noting that "[w]hen a

contract is a maritime one, and the dispute is not inherently

local, federal law controls the contract interpretation." Id.

(citing Kossick v. United Fruit, 365 U.S. 731, 742 (1961)). The

Court went on to point out that while the suit "was properly

brought in diversity . . . it could also be sustained under the

admiralty jurisdiction by virtue of the maritime contracts

involved." Id. As such, the Court cited the caveat in the Hawn

decision that "substantial rights . . . are not to be determined

differently whether [a] case is labeled 'law side' or admiralty

side' on a district court's docket." Id. (citing Hawn, 346 U.S.

at 411). As such, the Court concluded under the two-step

analysis of Kossick that the various bills of lading were all

maritime contracts. Id. In this conclusion, the Court

"reiterated that the fundamental interest giving rise to maritime

jurisdiction is the protection of maritime commerce." Id.

(citing Exxon Corp. v. Central Gulf Lines, Inc., 500 U.S. 603,

611 (1991)) (internal quotations omitted and emphasis in
original).  Additionally, the Court found that the case at issue
was not "inherently local" and did not "beckon interpretation by
state law." Id. at 27.  Specifically, the Court found no
specific state interest at stake on the issue of whether the
railroad defendant should be entitled to limitation of liability,
and further noted that, in any event, "when state interests
cannot be accommodated without defeating a federal interest . . .
then federal substantive law should govern." Id. (citing
Kossick, 365 U.S. at 739).  In sum, the Kirby Court found that
federal maritime law must trump conflicting state law:

> Here, our touchstone is a concern for the uniform meaning
> of maritime contracts like the [bills of lading]. We have
> explained that Article III's grant of admiralty
> jurisdiction must have referred to a system of law
> coextensive with, and operating uniformly in, the whole
> country. It certainly could not have been the intention
> to place the rules and limits of maritime law under the
> disposal and regulation of the several States, as that
> would have defeated the uniformity and consistency at
> which the Constitution aimed on all subjects of a
> commercial character affecting the intercourse of the
> States with each other or with foreign states.
>
> Applying state law to cases like this one would undermine
> the uniformity of general maritime law. The same
> liability limitation in a single bill of lading for
> international intermodal transportation often applies
> both to sea and to land . . . . Such liability clauses
> are regularly executed around the world.  Likewise, a
> single Himalaya Clause can cover both sea and land
> carriers downstream . . . . Confusion and inefficiency
> will inevitably result if more than one body of law
> governs a given contract's meaning. As we said in
> Kossick, when "a [maritime] contract ... may well have
> been made anywhere in the world," it "should be judged by
> one law wherever it was made." Here, that one law is

17

federal.

Id. at 28-29 (internal quotations and citations omitted).

In this case, the general maritime law of contracts - not the Louisiana Open Account Statute - governs Jambon's claims for breach of the charter party agreements by failure to timely pay. Further, it is undisputed that the general rule in maritime contract claims precludes recovery of attorney's fees unless there is a controlling statute or contractual provision that allows for such recovery. See Texas A&M Research Foundation v. Magna Transp., Inc., 338 F.3d 394, 405 (5th Cir. 2003) ("Maritime disputes generally are governed by the 'American Rule,' pursuant to which each party bears its own costs . . .[and] [t]herefore absent statute or enforceable contract, litigants must pay their own attorneys' fees." (internal quotations omitted)). Jambon argues that Louisiana's Open Account Statute is a statutory basis for an award of attorney's fees notwithstanding the general maritime rule. However, this argument, on its face, would present an obvious collision between the general maritime rule precluding recovery of attorney's fees on a maritime contract claim and the Louisiana state law rule allowing for recovery of fees on an open account claim.

Unsurprisingly, the Fifth Circuit has recognized the threat to uniformity that such a collision would create, and has thus held that state law attorney's fee statutes cannot trump the

general maritime "American Rule" barring recovery of fees. <u>Texas</u>
<u>A&M</u>, 338 F.3d at 406. In <u>Texas A&M</u>, the plaintiff successfully
sued the defendant, in admiralty, for damages resulting from the
late delivery of specialized ocean research equipment. <u>Id</u>. at
397. On appeal, the defendant argued in part that it should not
have been liable for plaintiff's attorney's fees under the
general maritime "American Rule." <u>Id</u>. at 405. The plaintiff,
however, identified a *Texas* state statute, allowing a party
seeking damages for breach of an oral contract to recover
reasonable attorney's fees. <u>Id</u>. at 406. The court noted that it
had previously avoided the direct collision between the state law
and the maritime law under a prior version of the Texas statute,
when it held that the prior version was discretionary and thus
the district court's denial of fees in that case should not be
overturned. <u>Id</u>. (citing <u>MTO Maritime Transp. Overseas, Inc. V.</u>
<u>McLendon Forwarding Co.</u>, 837 F.3d 215, 219-20 (5th Cir. 1988)).
However, the <u>Texas A&M</u> court noted that, since the <u>MTO Maritime</u>
decision, the Texas Supreme Court had held that an award of fees
was *mandatory* under the statute. <u>Id</u>. As a result, the court
directly "address[ed] the question reserved in <u>MTO Martitime</u>
decision, namely, **'the applicability of state laws providing for
attorney's fees in an admiralty contract dispute**.'" <u>Id</u>. (emphasis
added). The court recognized that two other circuits – the First
and the Third – had determined that "the strong interest in

19

maintaining uniformity in maritime law" should preclude state statutes from trumping the general maritime rule regarding attorney's fees. Id. (citing <u>Sosebee v. Rath</u>, 893 F.2d 54, 56-57 (3d Cir. 1990) & <u>Southworth Mach. Co. v. F/V Corey Pride</u>, 994 F.2d 37, 41 (1st Cir. 1993)). As such, the Fifth Circuit "likewise conclude[d] that the general rule of maritime law that parties bear their own costs, coupled with the need for uniformity in federal maritime law, precludes the application of state attorneys' fee statutes such as [the Texas statute], to maritime contract disputes." Id.

The Fifth Circuit has since reiterated that as a matter of general maritime law, "[a]bsent a **federal statute** or an enforceable contract, litigants must pay their own attorney's fees." <u>OneBeacon America Ins. Co. v. Turner</u>, 204 Fed. Appx. 383, 385 (5th Cir. 2006) (citing <u>Texas A&M</u>, 338 F.3d at 406) (emphasis added). Thus, the <u>Texas A&M</u> decision – notwithstanding the fact that it concerned a Texas statute – forecloses Jambon's argument for application of the Louisiana Open Account statute in the instant case. Furthermore, to the extent that Jambon argues that its claim is simply an open account claim arising solely under Louisiana law, the clear – and in large part conceded – maritime nature of its claims precludes any application of the Open Account Statute. Jambon's claims, despite any attempt to characterize them differently, are for breach of charter party

agreements and/or maritime service and supply contracts. As such, these contract claims, like those in Kirby, are maritime; the dispute is not inherently local; and thus federal law – not state law – controls interpretation of the parties' rights under the contracts. Furthermore, allowing Jambon's claims to proceed under the Open Account Statute would threaten the uniformity of the maritime law. In this case, as in Kirby and Kossick, although the "[maritime] contract ... may well have been made anywhere in the world," it "should be judged by one law wherever it was made." Kirby, 543 U.S. at 29. Furthermore, in this case, as in Kirby, that law is the general maritime law, and Jambon's attempt to color its claims as arising under Louisiana's Open Account Statute is unavailing. The availability of attorney's fees is an inherent aspect of Jambon's contract claims and, despite its purposeful avoidance of maritime *jurisdiction*, it cannot avoid application of the *substantive maritime law* as it relates to a claim for fees. Allowing Jambon's claims to proceed under Louisiana's Open Account Statute would constitute the same threat to the general maritime law that the Supreme Court has consistently strived to avoid, namely that "substantial rights . . . [might] be determined differently whether [a] case is labeled 'law side' or admiralty side' on a district court's docket." Kirby, 543 U.S. at 22 (citing Hawn, 346 U.S. at 411).

Finally, the district court cases cited by Jambon in which

Louisiana's Open Account Statute has been applied to award
attorney's fees in maritime cases all *predated* the Fifth
Circuit's decision <u>Texas A&M</u>.  See <u>Elmwood Marine Servs., Inc. v.
Int'l Towing & Transp. Co., Inc.</u>, 2002 WL 100622 (E.D. La. Jan.
23, 2002); <u>St. James Stevedoring, Inc. v. Ulltang</u>, 1997 WL 52444
(E.D. La. Feb. 6, 1997); <u>Lachmann Agencias Maritimas, S.A. v. Am.
Gulf Lines, Inc.</u>, 1996 WL 50798 (E.D. La. Feb. 7, 1996); <u>Elmwood
Drydock & Repair v. Int'l Bldg. Sys.</u>, 1994 WL 715991 (E.D. La.
Dec. 20, 1994); <u>Elmwood Dry Dock & Repair v. H&A Trading Co.,
Ltd.</u>, 1993 WL 459958 (E.D. La. Nov. 3, 1993).  Furthermore, none
of these cases addressed in any way the inherent conflict between
the attorney's fee provisions of the Louisiana Open Account
statute and the general "American Rule" applicable to claims for
attorney's fees as a matter of general maritime law.  Rather, the
better reasoned district court decisions - which includes the
only post-<u>Texas A&M</u> decision that addresses this issue directly -
have concluded that the Louisiana Open Account statute cannot
override the general maritime rule to allow for recovery of
attorney's fees in maritime contract cases.  See <u>Sea Link Cargo
Servs., Inc. v. Marine Centre, Inc.</u>, 2009 WL 1106863, *7 (E.D.
La. Apr. 22, 2009); <u>Stevedoring Servs. of Am., Inc. v. Int'l
Marine Carriers, Inc.</u>, 1997 WL 40644, *1 (E.D. La. Jan. 30, 1997)
("The court agrees that the general rule under maritime law that
plaintiffs cannot recover attorney fees absent a showing of bad

22

faith precludes recovery of attorney fees under Louisiana's Open

Accounts statute."); <u>McGinnis, Inc. v. Mariner Transp. Inc.</u>, 1992

WL 124798, *1 (E.D. La. May 28, 1992) ("[I]t is clear that

recovery of attorneys fees under the Louisiana statute would

interfere with the uniformity of general maritime law, to which

Louisiana state law must yield."); <u>Scott Chotin, Inc. v.</u>

<u>Merchants Transp., Inc.</u>, 1992 WL 84294, *1 (E.D. La. Apr. 22,

1992) (denying claim for attorney's fees under Louisiana Open

Account statute due to lack of contract provision providing for

recovery of fees, and because "there [was] no statute which

permit[ted] the award of attorney's fees in admiralty cases").

To the extent Jambon attempts to distinguish these cases on the

ground that they all specifically pointed out the plaintiff's

affirmative invocation of admiralty jurisdiction and its

concomitant substantive provisions, the Court's above-discussion

of Supreme Court precedent regarding the inherently "salty

flavor" of maritime contract claims nullifies this distinction.

As the Fifth Circuit has noted, in reliance on those same Supreme

Court cases:

> To hold that a plaintiff, entitled to elect his forum as
> between a Federal court, sitting in admiralty, and a
> court of common law, either state or federal, has a right
> to elect whether the liability of the defendant shall be
> determined by the maritime law or by the common law
> standards of the state would defeat the uniformity which
> the Constitution requires in such cases. <u>Chelentis v.</u>
> <u>Luckenbach S.S. Co.</u>, 247 U.S. 372 . . . . This is true
> even though . . . jurisdiction is asserted to be on the
> ground of diversity of citizenship. Pope & <u>Talbot, Inc.,</u>

<u>v. Hawn</u>, 346 U.S. 406. The maritime principles would prevail even though the action were brought in a state court. They are 'common law remedies' which may be had, where available, but maritime rights which are redressed.

<u>J. B. Effenson Co. v. Three Bays Corp.</u>, 238 F.2d 611, 615 (5th Cir. 1956) (holding that rights under a charter party were governed by maritime law and not Florida state statutory law). In sum, Jambon's claims arise under the *substantive law of the sea*, regardless of any attempt to haul them into the dry dock of Louisiana law. As such, Jambon's motion should be denied.

In any event, the Court finds, in addition to the legal basis for denial of summary judgment discussed above, that material issues of fact remain with respect to the amount(s) due under the various disputed invoices in this case. Even if § 9:2781 could apply in this case, the Fifth Circuit has noted that "a claimant can fail under § 9:2781 if his underlying claim is only partially meritorious." <u>Hayne v. B.J. Hardy</u>, 802 F.2d 826, 830 (5th Cir.1986); see also <u>Mon River Towing, Inc. v. Alan D. Alario & Associates, L.L.C.</u>, 2007 WL 2071661, *3 (E.D. La. July 12, 2007) (denying attorney's fees under § 9:2781 in a maritime case arising out of a charter party agreement based on lack of any determination that plaintiff was entitled to the full amount sought in its written demands). In fact, "[t]he Louisiana Supreme Court has interpreted the 'correct amount' requirement with great stringency, holding that a claimant cannot recover fees under § 9:2781 unless the court decides that he is entitled

24

to the full amount requested in the written demand sent at least
30 days before trial." <u>Hayne</u>, 802 F.2d at 830. Thus, "[i]f a
claimant's bill is adjusted by the court to any degree
whatsoever, the claimant is held to have failed to meet the
statutory requirement of giving notice as to the correct owed."
<u>Id</u>. In sum, "under the Louisiana statute nothing short of a
complete recovery in court of the amount demanded before trial
will suffice to fulfill the requirements of § 9:2781." <u>Id</u>.

In this case, Jambon's contention that Seamar has merely
engaged in "a shell game of confused facts" simply highlights the
uncertainty of the amounts due under the various invoices.
Furthermore, Jambon's contention that Seamar has offered no
evidence regarding disputed invoice charges is belied by the
present summary judgment record, which includes an affidavit by
Daniel C. McIntee, vice-president and general counsel for Seamar.
Rec. Doc. 29-3. In his statement, McIntee indicates that Seamar
has disputed and continues to dispute in their entirety the
amounts due under Invoice Nos. 2670 and 2546, as well as $1,800
of the amount due under Invoice No. 2630. This affidavit
constitutes competent summary judgment evidence, sufficient to
preclude summary judgment. As such, even if § 9:2781 could apply
in this case – and the Court specifically holds it cannot not
based on principles of uniformity of the maritime law – summary
judgment would be inappropriate, as there has been no

determination that Jambon is entitled to the full amount sought in its written demands.  Accordingly,

**IT IS ORDERED** that Jambon's **Motion for Summary Judgment (Rec. Doc. 22)** is hereby **DENIED**.

**IT IS FURTHER ORDERED,** in light of the Court's ruling, that Jambon's **Motion for Leave to File Supplementary Affidavit to Motion for Summary Judgment (Rec. Doc. 37);** Seamar's **Response in Opposition (Rec. Doc. 38);** and Plaintiff's **Motion for Leave to File Reply Memorandum to Defendant's Response to Plaintiff's Motion for Leave to File Supplemental Affidavit (Rec. Doc. 41)** are hereby **DENIED AS MOOT.**

New Orleans, Louisiana, this ___20th___ day of ___July___, 2009.


CARL J. BARBIER
UNITED STATES DISTRICT JUDGE